```
_____ FILED         _____ RECEIVED
_____ ENTERED       _____ SERVED ON
                    COUNSEL/PARTIES OF RECORD

        JAN 24 2013

     CLERK US DISTRICT COURT
      DISTRICT OF NEVADA
BY: _____ DEPUTY
```

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

KEVIN FERNANDEZ,  )  3:12-cv-00401-LRH (WGC)
)
　　　Plaintiff,  )  **REPORT AND RECOMMENDATION**
)  **OF U.S. MAGISTRATE JUDGE**
vs.  )
)
DR. CENTRIC, et. al.  )
)
　　　Defendants.  )
_____)

　　　This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for Temporary Restraining Order (Doc. # 5)[1] and Preliminary Injunction (Doc. # 6).[2] Defendants opposed (Doc. # 12) and Plaintiff replied (Doc. # 27). In addition, Plaintiff was granted leave to file various supplemental briefs in support of his position. (*See* Doc. # 28-1, Doc. # 71-1.) After a thorough review, the court recommends that Plaintiff's request for injunctive relief be denied.

## I. BACKGROUND

　　　At all relevant times, Plaintiff Kevin Fernandez was an inmate in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Compl. (Doc. # 4) at 1.)[3] The allegations giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center

---

[1] Refers to the court's docket number.

[2] Doc. # 6 and Doc. # 7 are identical, but were docketed separately by the Clerk's Office.

[3] A motion for leave to amend the Complaint is currently pending and will be addressed in a separate order. (*See* Doc. # 72.)

(NNCC). (*Id.*) Plaintiff is currently housed at Ely State Prison (ESP). (*Id.*) Plaintiff, a pro se litigant, brings this action pursuant to 42 U.S.C. § 1983. (*Id.*) Defendants are Dr. Ronald Centric, Greg Cox, Susan Fritz, Dr. Karen Gedney[4], David Konrad, Jack Palmer, Dr. John Scott, Elizabeth Walsh, and Robert Schober.[5] Plaintiff has also named various doe defendants that have not yet been identified.[6]

Plaintiff asserts claims against Defendants under the First, Eighth, and Fourteenth Amendments in connection with his placement in the Mental Health Unit (MHU) at NNCC, being labeled mentally ill, being subjected to treatment for mental illness through therapy, and involuntary administration of anti-psychotic prescription drugs. (Doc. # 4.)

Plaintiff now seeks an order enjoining Defendants from labeling Plaintiff as mentally impaired or mentally ill, from admitting Plaintiff into the MHU or other mental health facility, and from attempting to prescribe anti-psychotic drugs to him against his will without first providing him the due process protections outlined in *Vitek v. Jones*, 445 U.S. 480 (1980), and *Washington v. Harper*, 494 U.S. 210 (1990). (Docs. # 5, # 6 at 1.) In addition, Plaintiff wants the foregoing to be subject to this court's approval during the pendency of this matter. (*Id.*)

Defendants oppose the request for injunctive relief, arguing that Plaintiff's request is moot because: (1) he is no longer housed at NNCC, and with the exception of defendant Cox, the request for injunctive relief is directed towards individuals at NNCC; (2) Plaintiff has not been prescribed any anti-psychotic drugs since January 10, 2012, and that prescription expired on February 10, 2012; (3) Plaintiff was discharged from the MHU, and physicians orders since that date do not contain a reference to mental health housing; and (4) Plaintiff is not currently labeled as mentally ill. (Doc. # 12.)

///

---

[4] Erroneously identified by Plaintiff in the Complaint as Dr. Gentney. (*See* Errata at Doc. # 93.)

[5] Erroneously identified by Plaintiff in the Complaint as Sergeant Chubert. (*See* Errata at Doc. # 92.)

[6] A motion for leave to amend to substitute in the names of various doe defendants is currently pending and will be addressed in a separate order. (*See* Docs. # 86, # 91.)

2

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when

3

applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.*

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id.*

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

The standard for issuing a temporary restraining order is identical to the standard for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex parte motion for a temporary restraining order and preliminary injunction as a motion for a preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

### III. DISCUSSION

**A. Likelihood of success on the merits**

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20.

**1. Fourteenth Amendment Procedural Due Process- Count II**

In Count II, Plaintiff claims that his placement in the MHU and being labeled mentally ill had stigmatizing consequences. Additionally, he alleges he was subjected to mandatory mental health treatment while in the MHU. Plaintiff claims he did not receive notice of the January 2, 2012 hearing before he was placed in the MHU. He also alleges that at the hearing, he was not able to present witnesses or cross-examine witnesses, did not have an independent decision maker, did not receive a written statement regarding his placement in the MHU and did not have the availability of qualified assistance. Plaintiff claims that these same infirmities existed at the January 5, 2012 hearing. He further asserts that on January 10, 2012, Dr. Centric prescribed him the anti-psychotic drug Thorazine, and on January 22, 2012, he was administered Thorazine without his knowledge and against his will.

///

///

5

### a. involuntary psychiatric treatment and placement in the MHU after being characterized as mentally ill

In *Vitek v. Jones*, 445 U.S. 480 (1980), the Supreme Court held that a due process liberty interest was implicated when an inmate was "characteriz[ed]...as a mentally ill patient and was transfer[ed] to [a mental health hospital to undergo] mandatory behavior modification treatment." *Id.* at 488. In addition, it has been held that "[t]he due process clause of the Fourteenth Amendment substantively protects a person's rights to be free from unjustified intrusions to the body, to refuse unwanted medical treatment and to receive sufficient information to exercise these rights intelligently." *Benson v. Terhune*, 304 F.3d 874, 884 (9th Cir. 2002) (citing *White v. Napoleon*, 897 F.2d 103, 111 (3d Cir. 1990)) (internal citations omitted).

> In this context, due process is satisfied if the inmate is provided:
>
> (1) written notice that a transfer to a mental hospital was being considered; (2) a hearing, sufficiently after the notice, at which disclosure to the prisoner was made of the evidence being relied upon and at which an opportunity to be heard in person and to present documentary evidence was given; (3) an opportunity at the hearing to present testimony of witnesses by the defense and to confront and cross-examine witnesses called, unless good cause was shown for why such confrontation and cross-examination should not be permitted; (4) an independent decision maker; (5) a written statement by the fact finder as to the evidence relied on and the reasons for action; (6) the availability of qualified and independent assistance, which may be an attorney, but need not be; and (7) effective and timely notice of all the foregoing rights.

*Meza v. Livingston*, 607 F.3d 392, 407 (5th Cir. 2010) (citing *Vitek*, 445 U.S. at 494-95 (majority opinion), 499-500 (Powell, J., concurring)).

Plaintiff asserts that he was admitted to the MHU, labeled mentally ill, and treated for mental illness without provision of the due process protections outlined in *Vitek v. Jones*. (Docs. # 5, # 6 at 6.) Defendants only argue that Plaintiff's request for injunctive relief is moot, and did not present any argument as to whether Plaintiff's claims have merit. Nor did they provide any documentary evidence purporting to demonstrate Plaintiff was provided with the procedural protections outlined in *Vitek*. Assuming the truth of Plaintiff's assertion that he did not receive any of the procedural protections outlined in *Vitek v. Jones*, Plaintiff has demonstrated a likelihood of success on the merits with respect to his procedural due process

claim concerning his being labeled mentally ill, placed in the MHU and receiving treatment in the form of therapy against his will.

### b. Involuntary administration of anti-psychotic medication

In *Washington v. Harper*, 494 U.S. 210 (1990), the Supreme Court held that an inmate has "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Id.* at 221-22. However, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227. The Supreme Court also outlined the "procedural protections [ ] necessary to ensure that the decision to medicate an inmate against his will is neither arbitrary nor erroneous." *Id.* at 228. The decision whether to medicate an inmate against his will satisfies due process when facilitated by an administrative review by medical personnel not then involved in the inmate's treatment. *Id.* at 233. Due process does not require a judicial hearing before an inmate may be involuntarily medicated. *Id.* at 228. Nor does it require a hearing conducted in accordance with the rules of evidence or a "clear, cogent, and convincing" standard of proof. *Id.* at 235. Instead, due process is satisfied if the inmate is provided with notice, the right to be present at an adversarial hearing, and the right to present and cross-examine witnesses. *Id.* at 235. Appointment of counsel is not required; the provision of a lay adviser who understands the psychiatric issues involved is sufficient. *Id.* at 236.

The Ninth Circuit has found that the procedural protections outlined in *Washington v. Harper* may not apply in an emergency situation. *See Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998). There, the court appeared to agree that an emergency could potentially excuse compliance with notice and a pre-medication hearing, even though the facts in the case before it did not present an actual emergency.

Here, Plaintiff concedes that he was found to be mentally ill so as to be a danger to himself and others. (*See* Docs. # 5, # 6 at 2.) However, Plaintiff asserts that on January 2, 2012,

a hearing was held without providing Plaintiff proper notice and due process protections set forth in *Vitek v. Jones* or *Harper v. Washington*. (*Id.*) Plaintiff claims Defendants held another procedurally infirm hearing on January 5, 2012, and he was kept in the MHU against his will. (*Id.* at 3.) Plaintiff further asserts that he was then involuntarily prescribed anti-psychotic medication by Dr. Centric on January 10, 2012. (*Id.*)

Again, Defendants do not present an argument as to the merits of Plaintiff's claim. Nor have they provided any documentary evidence to establish compliance with the due process protections outlined above. Therefore, assuming the validity of Plaintiff's allegations regarding the failure to provide him with the due process protections outlined in *Washington v. Harper* in connection with the administration of Thorazine, and the absence of an emergency situation, the court finds Plaintiff has demonstrated a likelihood of success on the merits with respect to this claim.

### 2. Fourteenth Amendment Substantive Due Process- Count I

In Count I, Plaintiff claims that various defendants violated his right to substantive due process when they admitted and retained him in the MHU even though he is not mentally ill. Plaintiff alleges that defendants Schober and an unidentified correctional officer took him into the MHU to have him admitted and labeled mentally ill. He claims their actions were arbitrary, unreasonable and without a logical penological purpose. He further alleges that on January 5, 2012, various unidentified doctors and nurses as well as defendants Fritz and Konrad held a hearing and decided to retain Plaintiff in the MHU and this decision was arbitrary, unreasonable and without a penological purpose because there was no evidence of Plaintiff having a mental illness. Next, Plaintiff avers that on January 6, 2012, defendants Dr. Centric and Fritz and various unidentified defendants held a therapy session which Plaintiff was forced to attend against his will. Plaintiff claims this was arbitrary and unreasonable because these defendants had the authority to release him but continued to subject him to mental health treatment against his will.

Substantive due process protects individuals from arbitrary and unreasonable

government action which deprives any person of life, liberty, or property. *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994). To establish a substantive due process violation, the government's action must be shown to be "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Sinaloa Lake Owners v. Simi Valley*, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting *Village of Euclid v. Amber Realty Co.*, 272 U.S. 365, 295 (1926)); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir. 1988). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (citation omitted). However, "[w]hether the point of the conscience-shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence...is a matter for closer calls." *Id.*

Plaintiff's conclusory statements that his substantive due process rights were violated do not cross the threshold of establishing he is likely to succeed on the merits of this claim. While Defendants did not present an argument regarding the merits of this claim, they did provide the court with some of Plaintiff's medical records for the relevant time period which at a minimum create a factual issue regarding the circumstances surrounding the mental health treatment and administration of anti-psychotic medication so as to preclude a finding that the government action in question was "clearly arbitrary and unreasonable." As a result, the court finds that Plaintiff has not demonstrated a likelihood of success on the merits of the substantive due process claim.

**3. First Amendment retaliation- Count III & Eighth Amendment safety- Count IV**

Plaintiff fails to address the likelihood of success on the merits with respect to these two claims.

**B. Likelihood of suffering irreparable harm**

Plaintiff must demonstrate that irreparable injury is likely in the absence of an

injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

This factor is at the center of Defendants' opposition. They argue that Plaintiff cannot establish a likelihood that he will suffer irreparable harm because he has not been prescribed anti-psychotic drugs since January 10, 2012, he was discharged from the MHU and no orders exist to place him in mental health housing, and he is not currently labeled as mentally ill. In addition, Defendants argue that the request for injunctive relief is moot because Plaintiff was transferred from NNCC, where the conduct in question took place, and no one at the facility where he is currently housed is a party to this action. (Doc. # 12 at 2-3.) While Plaintiff has named Defendant Cox, the Director of NDOC, Defendants argue that he has no knowledge of the events surrounding Plaintiff's Complaint and provide his declaration to that effect. (*See* Doc. 12 at 2 n. 2, Doc. # 12-1 at 2.)

First, Plaintiff argues that while the prescription for anti-psychotic medication may have expired on February 10, 2012, Plaintiff was told by nurses and mental health counselors that the prescription was still valid. (*See* Doc. # 27 at 6.) In addition, he claims that while the prescription may have expired, it is likely he will be prescribed medication again because he was forced to attend a hearing to determine if he was to continue on the medication. (*Id.*)

Next, Plaintiff maintains it is still likely that he will be labeled as mentally ill and forced to receive mental health treatment. (Doc. # 27 at 8-9.) Plaintiff claims his mental health classification was only changed when he filed this motion. (*Id.* at 8.) In addition, he states that even though he was discharged from the MHU, he continued to be treated as mentally ill because he received visits from a mental health counselor. (*Id.*) He also claims that he was subjected to treatment on at least two occasions against his will when the counselor came to his cell. (*Id.* at 9.) In his supplemental brief, Plaintiff asserts that after he was transferred to ESP, he was classified as mentally ill again on July 19, 2012. (Doc. # 38 at 5.) Then he was reclassified as not mentally ill on August 10, 2012. (*Id.* at 6.) Plaintiff says this is evidence that there is a likelihood he will be reclassified as mentally ill in the future which will cause him to

continue to suffer from the stigma of being labeled as such.

Finally, Plaintiff argues that it is still likely he will be transferred to mental health housing at ESP. (*Id.* at 10.)

First, the court will address Defendants' argument that Plaintiff's request for injunctive relief is moot because he has been transferred from NNCC, where the alleged constitutional infirmities took place, to ESP, and none of the Defendants are employed at ESP. (Doc. # 12 at 3.) The Ninth Circuit has acknowledged that a request for injunctive relief against officials at a particular prison facility becomes moot when the prisoner is moved from that prison; however, to the extent the request is asserted with respect to a "department-wide" official, *i.e.*, a director, regarding a policy that pervades the prison system, the request may proceed. *See Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001).

As a result of Plaintiff's transfer from NNCC to ESP, Plaintiff's request for injunctive relief is moot insofar as it is directed to defendants at NNCC. Defendants acknowledge that Plaintiff has named Director Cox as a defendant, but argue that the injunction should nevertheless be denied as moot because there is no basis to hold him liable for the alleged unconstitutional conduct at issue. Plaintiff, on the other hand, disputes this and argues that Director Cox did have knowledge of Plaintiff's admission to the MHU and the administration of anti-psychotic medication. (Doc. # 27 at 2-3.) In support of his position, Plaintiff provides communications between himself and his mother and Director Cox regarding these issues. (Doc. # 27 at 3; Doc. # 27 at 21; Doc. # 28-1; Doc. # 46 at 4.) While the court finds that Plaintiff has at least raised a factual issue regarding Director Cox's knowledge of Plaintiff's circumstances, so that the request for injunctive relief would otherwise be allowed to proceed against him, Plaintiff has still failed to establish it is likely he will suffer irreparable injury in the absence of an injunction.

Next, the court will address Defendants' argument that the request for injunctive relief is moot because Plaintiff has not been prescribed Thorazine since January of 2012, he was discharged from the MHU in January 2012, and is not currently labeled mentally ill.

Plaintiff is correct that voluntary cessation of allegedly illegal conduct does not moot a plaintiff's claim for injunctive relief. *Friends of the Earth, Inc.*, 528 U.S. 167, 189 (2000). Doing so would "leave the defendant free to return to his old ways." *Id.* Rather, a case does not become moot by a defendant's voluntary cessation of the allegedly illegal conduct unless the defendant satisfies the "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again..." *Id.* That being said, a plaintiff is still tasked with establishing that he is "likely" to suffer irreparable harm, and not merely that injury is a "possibility." *See Winter*, 555 U.S. at 22; *see also Enyart v. National Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2013) (citation omitted) (finding a likelihood of irreparable injury where plaintiff provided declaration that she would not be able to complete exam even with the use of some proposed accommodations which would likely lead to "the loss of the opportunity to pursue her chosen profession").

In *Washington v. Harper*, the seminal involuntary administration of anti-psychotic medication case, the respondent, like Defendants here, argued that the case was moot because the state had ceased the administration of anti-psychotic medication to the inmate. *See Washington*, 494 U.S. at 218. The Supreme Court dismissed that argument. *See id.* However, the facts present in *Washington* vary greatly from those presented here. In *Washington*, the Supreme Court noted that the inmate had been treated for mental illness from the time he was incarcerated, had been diagnosed with schizophrenia, and there was "no evidence that [he had] recovered from his mental illness." *Id.* Coupled with the fact that the inmate had been transferred to the mental health unit on two previous occasions during his period of incarceration, the Supreme Court concluded "there [was] a strong likelihood that [the inmate] may again be transferred to the Center" and "given his medical history, it [was] likely that, absent the holding of the Washington Supreme Court, Center officials would seek to administer antipsychotic medications pursuant [to their policy]." *Id.*

Here, Plaintiff's medical records indicate that he was prescribed Thorazine on January 10, 2012, for thirty days, and the prescription was not renewed beyond that prescription period.

(Doc. # 13-1 at 2-4.) Plaintiff was discharged from the MHU at NNCC on January 13, 2012, and has resided in segregated housing at ESP. (*Id.*, Doc. # 12-1 at 17.) Additionally, he is not currently characterized as mentally ill. (*See* Doc. # 38 at 6.) Plaintiff's belief, however sincere, that he will be classified as mentally ill, placed in the MHU, and prescribed Thorazine again does not rise to the level of a *likelihood* of irreparable injury under these facts. The mere *possibility* that these things will occur at some point in the future does not support a request for injunctive relief. This does not mean that Plaintiff cannot continue to pursue his action for damages for the alleged infringement of his constitutional rights with respect to conduct he asserts was taken by Defendants in January of 2012. It only means that he has not made a showing of a likelihood of irreparable injury in the context of his request for prospective injunctive relief.

### C. Balance of hardships

A party seeking injunctive relief "must establish...that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20.

Plaintiff argues that it is likely he will be admitted to the MHU again and subjected to involuntary administration of medication and treatment which will result in Plaintiff suffering the stigmatizing consequences, mental distress, and mind alteration. (Docs. # 5, # 6 at 10-11.) Defendants failed to address the balance of hardships factor.

As indicated above, Plaintiff has merely established it is *possible* he may be placed in the MHU again and subject to involuntary medication and treatment, not the requisite *likelihood* that this will occur. In light of this, the court cannot conclude that the balance of hardships tips in Plaintiff's favor.

### D. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quotation marks and citation omitted).

Plaintiff argues that it is in the public interest for NDOC officials to follow the law and

13

assure that it's citizens rights are not being violated. (Docs. # 5, # 6 at 12.)

Given that Plaintiff has not established that it is *likely* he will be labeled mentally ill, placed in the MHU and involuntarily administered anti-psychotic medication, the court finds it is not in the public interest to entertain a request for injunctive relief, particularly when Plaintiff seeks to extend such relief to persons who are not parties to this action.

### E. Conclusion

The prerequisites for injunctive relief not having been met, Plaintiff's request for injunctive relief should be denied.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Temporary Restraining Order (Doc. # 5) and Preliminary Injunction (Doc. # 6).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: January 24, 2013

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE