1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

9   KEVIN FERNANDEZ,                    )          3:12-cv-00401-LRH-WGC
                                        )
10            Plaintiff,                )          **ORDER**
                                        )
11        vs.                           )
                                        )
12  DR. CENTRIC, et al.,                )
                                        )
13            Defendants.               )
    _____)

14

15        District Judge Larry R. Hicks has remanded Plaintiff's Motion for Sanctions for Defendants'

16  Spoilation (sic) of Evidence (Doc. # 151)[1] to this court for further consideration. As directed, this order

17  will address the legal and factual issues presented by Plaintiff's motion.

18  **I. Background**

19        On May 30, 2013, Plaintiff filed a motion for sanctions for Defendants' alleged spoliation of

20  evidence. (Doc. # 151.) The court ruled on Plaintiff's motion in Docs. # 200 and # 201; Plaintiff's motion

21  was denied (Doc. # 201 at 2, ¶ 6). Plaintiff's motion to seal exhibits (Doc. # 152), which was filed in

22  support of his motion for sanctions, was granted in this court's minute order. (Doc. # 204.).  Plaintiff

23  later  moved to "correct" the court's order denying his motion for sanctions. (Doc. # 212.) The court

24  addressed Plaintiff's motion to correct in another order. (Doc. # 221.) In that order, the court determined

25  that even if Defendants confiscated and destroyed Plaintiff's biological evidence, Plaintiff's motion for

26  sanctions (Doc. # 151) was moot because the cause of action to which the alleged spoliation appeared

27  relevant (Eighth Amendment claim for involuntarily ingesting a laxative) had been dismissed and thus

28  Plaintiff's claims of spoliation pertaining to that cause of action was moot. (Doc # 221 at 2-4.)

_____

[1] Refers to court's docket number.

1    This court's analysis of the pertinence of the biological and/or photographic was stated as

2  follows:

3         One of Plaintiff's numerous pending motions to compel pertains, *inter
          alia*, to the production of photographs of "fecal matter and cups of urine
4         which were referenced in the officer's incident report... ." (Doc. #192-2
          at 2-3.) Defendants responded to Plaintiff's request for production #1,
5         sixth set, stating that the "fecal matter in plastic wrap and plastic bags of
          urine were secured in bio-hazzard containers and disposed of;
6         photographs or digital video images were not taken by officers to
          Defendants' knowledge." (*Id.*, at 3.) Therefore, this purported drugging
7         evidence is no longer in existence.

8  Doc. # 221 at 2:22-28.

9         This court concluded, however, even if this evidence was disposed of, wrongfully or otherwise,

10  because Plaintiff's Eighth Amendment claims relating to an assertion Defendants put a laxative in his

11  food had been dismissed (Doc. # 116 at 22, 23, 38; Doc. # 217 at 5), any such evidence which was

12  destroyed was irrelevant to this constitutional allegation. (Doc. # 221 at 2-4.) However, following

13  consideration of Plaintiff's objections to this order (Doc. # 228), Judge Hicks perceived this spoliation

14  allegation might be relevant to Plaintiff's claim he was involuntarily admitted into the prison's Mental

15  Health Unit and his being labeled–and treated–as mentally ill. (Doc. # 227 at 2.) Judge Hicks remanded

16  Plaintiff's motion (Doc. # 151) for further consideration by this court of this issue and several others, i.e.,

17  whether video recordings and photographs were disposed of and also whether Plaintiff has a viable

18  spoliation claim for Defendants' failure to administer a polygraph or secure blood work. (*Id.*)

19         Accordingly, the court now addresses Plaintiff's motion for spoliation and request for sanctions

20  from the standpoint of whether there has been any actionable spoliation

21  **II.  Overview of Plaintiff's Motion for Sanctions (Doc. # 151)**

22         Plaintiff moved for sanctions because of "the Defendants' spoilation (sic) of evidence." (Doc.

23  # 151 at 1.) Plaintiff did not identify which "Defendants" should be subject to sanctions. However, it

24  appears from Plaintiff's motion that three to six individuals may have some involvement with the

25  confiscation of the biological evidence. Plaintiff's motion states:

26         On January 02, 2012, the Defendants Shorey, Willhite and Hogan
          confiscated the biological evidence Plaintiff was keeping and destroyed
27         it.

28  Doc. # 151 at 3.

2

1    Plaintiff additionally alleges he told two other Defendants, Burchett and Schober–whom he states

2    "controlled the scene"–that this biological material "was evidence which proved Plaintiff was being

3    drugged through his food." (*Id.*) Plaintiff further avers that "it is likely Defendants Burchett and Schober

4    ordered them to do it." (*Id.* at 8.)  Plaintiff alleges that "this evidence is directly related to whether

5    Defendants Shepherd and Rhalston drugged Plaintiff's food." (*Id.* at 6.) He also asserts that "Shorey,

6    Willhite and Hogan destroyed the evidence intentionally." (*Id.* at 8.)[2]

7    The affidavit of Plaintiff Fernandez which accompanied the motion (Doc. # 151 at 21-22)

8    provides a somewhat different scenario. In ¶ 9 of Plaintiff's affidavit, he states on January 2, 2012, he

9    advised "Defendants Burchett, Schober and Moe" that the "urine and human waste" in his cell "were

10   evidence of [his] being drugged with laxatives by officers and that his evidence should be saved and

11   tested." In ¶ 10, he states he told officers Lamb, Moe and Schober "the urine and food samples were

12   evidence of [his] being drugged by NDOC[3] officers with laxatives." Plaintiff's affidavit, unlike his

13   motion, does not assert which officers confiscated the biological evidence. Nevertheless, based upon the

14   assertions found in both the motion and affidavit, it appears that a total of six NDOC correctional

15   officers are possibly implicated by Plaintiff in this activity, thus presumably constituting the makeup of

16   the "Defendants" about whom Plaintiff complains for the confiscation and spoliation of this evidence.

17   Plaintiff also contends as part of his spoliation claims the Defendants also took photographs and

18   video taped the "drugging." (*Id.* at 2.)  He avers also the "video, photographs and audio recordings are

19   relevant to every claim presented by Plaintiff. (*Id.* at 7.) He alleges the Defendants (again, without

20   specifying which Defendants) "have intentionally destroyed the urine samples and food samples and

21   failed to preserve...video and audio recordings, and polygraph evidence." (Doc. # 151 at 6.)[4]

22

23
     ────────────────────────
24   [2] The "drugging" of Plaintiff's food is not specifically discussed in Plaintiff's affidavit. However, his motion states
     that on November 11, 2011, his food was "drugged by an NDOC officer." It appears he  alleges a recurrence of "drugging"
     on December 4, 2011. (Doc. # 151 at 2.) At page 6, he alleges it was Defendants Shepherd and Rhalston who drugged his
25   food. However, Defendants Shepherd and Rhalston, the custodial officers who allegedly drugged his food, are apparently
     not the subject of Plaintiff's request for sanctions.

26
     [3] Nevada Department of Corrections.
27
     [4] As discussed later in this order at page 15, and as noted by Judge Hicks in his order (Doc. # 277, n. 2), there never
28   was any "polygraph evidence." Instead, Plaintiff's claim is predicated upon an assertion the "Defendants failed to provide
     Plaintiff with a polygraph examination." (Doc. # 151 at 10.)

1        Plaintiff also implicated another Defendant in his motion, Warden Palmer. He states that on

2    November 11, 2011, Plaintiff's family called Palmer "to advise him Plaintiff's food was drugged with

3    a laxative" and that Plaintiff had "saved samples of the food tray and urine and they needed to be picked

4    up and preserved." (*Id.* at 11.) Plaintiff also alleges that he wrote Palmer a memorandum on

5    November 15, 2011, requesting him "to pick up the evidence" and that "Palmer and Defendants failed

6    to do so." (*Id.* at 11.)

7        Last, Plaintiff alleges the Defendants "failed to provide Plaintiff with a polygraph examination

8    to preserve this evidence" (Doc. # 151 at 10) and that "Defendants also failed to investigate or take blood

9    samples" (*id.* at 11).

10       The foregoing sets forth the gravamen of Plaintiff's claims. The details of the nature of the

11   alleged spoliation are addressed later in this order at pages 6-9. However, prior to addressing the request

12   for sanctions and the alleged misconduct giving rise to the claims of spoliation, the court expresses its

13   concern about the identity of the Defendant(s) against whom Plaintiff seeks sanctions.

14       Technically, when Plaintiff filed his spoliation motion against the "Defendants" on May 30,

15   2013, the only persons involved in the alleged spoliation were Defendants Schober and Palmer.

16   Defendants Willhite, Hogan, Burchett, Moe and Lamb were not then Defendants in this matter.  It is

17   problematic whether this court can even entertain a motion for sanctions for spoliation against

18   individuals where were not defendants when the motion was filed.[5]

19       Although procedurally this is a potentially fatal flaw to Plaintiff motion, at least as to certain

20   Defendants, the court will not dispose of Plaintiff's motion on procedural grounds but will, instead, turn

21

22       [5] Plaintiff's motion did not specifically identify which of the "Defendants" he was targeting. When Plaintiff filed his
     motion on May 30, 2013, the only correctional officer involved in the spoliation who was then a named defendant was
23   correctional officer Schober. (Screening Order, Doc. #3; Answer, Doc. # 57.) Plaintiff had filed a motion to amend his
     complaint on November 29, 2012, which identified the correctional officers named in the motion as proposed parties
24   defendant. (Doc.# 72.) Plaintiff also filed a motion to amend/correct his complaint on December 20, 2012 (Doc # 86),
     followed by numerous errata regarding his proposed amendment on January 2, 2013. (Doc. ## 91, 92, 93.)  This court
25   thereafter evaluated the proposed amended complaint and errata, and a Report and Recommendation of Plaintiff's proposed
     amendment was entered on February 15, 2013. (Doc. # 112.) Plaintiff filed his objection to the report and recommendation
26   on March 8, 2013 (Doc. # 126); Defendants filed an opposition to Plaintiff's objection on May 22, 2013. (Doc. # 140.) The
     court later granted Plaintiff leave to file a reply to Defendants' opposition, which reply was filed on September 17, 2013.
27   (Doc. # 215.) District Judge Hicks thereafter entered an order on September 18, 2013, adopting and accepting the report and
     recommendation. (Doc. # 217.) As a result of the order, correctional officers Willhite, Hogan, Burchett, Moe and Lamb were
28   added to the litigation. However, it was not until Judge Hicks entered the order allowing the amendment of Plaintiff's action
     that all NDOC officers involved in the incident became "Defendants."

1 | to a substantive analysis of Plaintiff's motion. (Doc. # 151.)[6]

2 | **III.  Legal Standard**

3 |      The courts have held that if a party has engaged in unjustified spoliation of evidence, sanctions

4 | may be imposed.  Magistrate Judge George Foley cogently reviewed the relevant law on this subject in

5 | *Anderson v. Wal-Mart Stores, Inc.*, No. 2:10-cv-02245-GMN-GWF, 2012 WL 300878 (D. Nev. 2012):

6 |

7 |     The court has the inherent authority to impose sanctions based on a party's failure to preserve relevant evidence. Sanctions may be imposed

8 | if the party was on notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation and failed to take reasonable steps to preserve it. *United States v. $40,955 In U.S. Currency*, 554 F.3d

9 | 752, 758 (9th Cir.2009); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir.2006); and *United States v. Kitsap Physicians Serv.*, 314 F.3d 995,

10 | 1001 (9th Cir.1992). *See also Anderson v. Wal-Mart Stores, Inc.*, 2011 WL 4621286, at *3-*4 (D.Nev.2001). The forms of sanction may include

11 | (1) an instruction to the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence, (2) an order

12 | excluding witness testimony proffered by the party responsible for destroying the evidence, or (3) and dispositive order dismissing the

13 | complaint or entering a default judgment. *In re Napster*, 462 F.Supp.2d 1060, 1066 (N.D.Cal.2006). *See also Powell v. Texvans, Inc.*, 2011 WL

14 | 1099120, *4 (D.Nev.2011) and *Morford v. Wal-Mart Stores, Inc.*, 2011 WL 635220, *3 (D.Nev.2011). While a finding of bad faith is not

15 | required for the imposition of sanctions, "a party's motive or degree of fault in destroying evidence is relevant to what sanction if any, is

16 | imposed." *In re Napster*, 464 F.Supp.2d at 1066-67, citing *Baliotis v. McNeil*, 870 F.Supp. 1285, 1291 (M.D.Pa.1994). Courts should choose

17 | "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid v.*

18 | *Milwaukee Electric Tool Corp.*, 13 F.3d.76, 79, (3rd Cir.1994); *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263 (9th Cir.1993). *See also Leon v.*

19 | *IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir.2006).

20 |      These authorities, and others cited in this Order, demonstrate that if relevant evidence has been

21 | shown to exist, and if the possessor of that evidence was on notice that the evidence was potentially

22 | relevant to litigation which was reasonably foreseeable, and if that party failed to take reasonable steps

23 | to preserve it, sanctions may be imposed upon that party. The nature of the sanctions will depend on the

24 | party's motive or degree of fault in not preserving that evidence.  This court will now turn to a review

25 | of the factual background of Plaintiff's motion.

26 | *///*

27 |

28 |    [6] However, the court invites the parties to address the intriguing paradox about "Defendants" when the parties file their respective memoranda in response to this order.

1    **IV. Review and Discussion of the Components of Plaintiff's Spoliation Motion**

2         As discussed above, it appears there are five aspects to Plaintiff's motion for spoliation of

3    evidence.  One relates to the confiscation and destruction of the biological evidence (urine and feces).

4    The second pertains to whether photographs or video recordings of the seizure of the biological evidence

5    and/or "drugging" was destroyed (if it was recorded). The third relates to whether Warden Palmer was

6    advised to "pick up the evidence," whether he failed to do so and if so, his explanation. The fourth and

7    fifth are whether Plaintiff's request to undergo a polygraph examination, and to obtain blood tests, which

8    he contends Defendants failed to provide, gives rise to a viable spoliation claim.

9         The court will address in greater detail these aspects of Plaintiff's spoliation motion.

10        **a)  The Alleged Spoliation of Biological Evidence**

11        As addressed above, this claim of spoliation relates to an assertion "Defendants Shorey, Willhite

12   and Hogan confiscated the biological evidence and destroyed it." (Doc. # 151 at 3.) There is no dispute

13   that these materials were seized and disposed of. Indeed, the discovery and disposition of this biological

14   material was the subject of an exhibit filed by Defendants in response to Plaintiff's Motion for a

15   Temporary Restraining Order/Preliminary Injunction, Doc. # 13-1. This document, an NDOC incident

16   report regarding the discovery of the plastic-wrapped urine and feces in Plaintiff's cell, was filed under

17   seal. In light of Plaintiff's motion for sanctions for spoliation which references the Plaintiff's actions

18   which are the subject of this NDOC report, Doc. # 13-1 at 9-11 will now be unsealed and published by

19   the court.

20        This NDOC report reads in pertinent part as follows:

21                                    **Occurrence Date:** 01/02/2012
          Narrative
22        Unit 7B Reported that inmate Fernandez 20483 would not remove
          covering from his bed blocking the officers view. Upon further
23        interviewing and cell shake down, it was determined that inmate
          Fernandez was moved to Unit 8B after a psychological evaluation was
24        conducted. No force was used. AW Shreckengost was notified.

25                                    * * *
          SHOREY, ERIC                                        Participant
26        Comment: Unit Staff

27        *Reports*
          **Report Type   Report Detail**
28        INC028     On January 02, 2012 Correctional Officers E. Shorey,

6

C. Willhite, J. Hogan conducted a cell search and cell inspection of unit-7-B-40. This is where inmate Fernandez, K. #20483 was assigned alone. Upon starting the search of the cell a horrible stench generated from the bunk area. Upon further inspection we observed that inmate fernandez (sic) was rolling fecal matter in plastic wrap and storing it in containers an plastic bags. Also he had cups of urine stored. The items were recovered and secured in Bio- Hazard (sic) containers and disposed. Inmate fernandez (sic) was reassigned to the medical unit an his remaining property inventoried and secured. [7]

* * *

BURCHETT, SCOTT                                        Reporting
Comment: Shift Commander

**Report Type   Report Detail**
INC028     On January 02, 2012 at approximately 9:30 a.m. I, Sergeant (Sgt) Scott Burchett, received a call for Correctional Officer (C/O) Shorey stating that an Inmate (I/M) Fernandez, Kevin #20483 refused several orders to remove the coverings hanging from his bed blocking the view of the officers. I/M Fernandez was told if he did not remove the coverings from the bed that the shift supervisor would be notified. I/M Fernandez told staff to go ahead and notify the shift supervisors. Myself and Sgt. Schober responded from Operations to speak with I/M Fernandez. I/M Fernandez was asked to submit to restraints in which he did. While I/M Fernandez was out of his Cell, a compliance check was done. During this check numerous containers of what appeared to be Feces were found. When I/M Fernandez was asked why he had these he told us he could not use the toilet because this was the signal to the staff to go tell all the other inmates on the tier what he was doing. Myself and Sgt. Schober decided to have IM Fernandez be given a mental health evaluation by the Mental health staff on duty. It was determined by mental health staff that I/M Fernandez remain in Unit 8B for evaluation. No further issues. Property secured by Unit 7B staff and AW Schreckengost notified. End of Report

SCHOBER, ROBERT                                        Participant

**Report Type   Report Detail**
INC028     On January 02, 2012 I Sgt. Schober reported to unit 7B at approximately 9:50 a.m. Unit officers called and informed Sgt. Burchett that Inmate Fernandez #20483 housed in cell 40 would not remove his covering so officers could see this inmate. I went to inmate Fernandez's Cell and asked him to comply with being placed in wrist restraints, he complied. This was done so I could talk with the inmate with out other inmates listening. This inmate was moved to a shower away from other inmate cells. I then asked why he would not take

---

[7] NDOC Unit Staff Officers Curtis Willhite and James Hogan, entered this same narrative on the NDOC report.

7

1

2

3

4

5

6

7

down the covering blocking the unit officers view. Inmate Fernandez #20483 informed me that he wad being watched 24/7 and that he could not even go to the toilet because it did not work. Sgt. Burchett checked the toilet and found it to be in working order. This inmate then informed me that officers were out to get him by using other inmates to make claims against he (sic). I was informed that this inmate had been saving his feces in baggies and saran rap (sic). I then had Officer Shorey call medical to get permission to have inmate Fernandez evaluated. Inmate Fernandez #20483 was then taken over to medical unit 8B and was seen by Phys Nurse J. Lamb. (Time was 10:05 a.m.) The inmate was placed in unit B for further evaluation.

8   Doc. # 13-1 at 9-11.

9       Thus, there is no dispute this material was confiscated and destroyed. What is different between

10   the descriptions of the events by Defendants and Plaintiff is that there is no mention in the NDOC

11   reports (which the correctional officers apparently prepared contemporaneous with the events) that

12   Plaintiff told any of the correctional officers he was attempting to preserve feces and urine for use in

13   prospective litigation, as Plaintiff claims. Instead, the reports stated Plaintiff informed the officers he

14   stored his urine and feces in plastic bags because of an alleged inability to use the toilet. According to

15   the reports, he claimed if he had used the toilet, staff would then "go tell all the other inmates on the tier

16   what he was doing." (*Id*., Schober Report.)

17       The issue is thus narrowed as to whether the correctional officers were advised by Plaintiff of

18   his intentions to use this evidence in support of litigation he was contemplating and, if yes, why they

19   undertook the actions they did (to dispose of the material). Therefore, **on or before May 30, 2014**,

20   Defendants' counsel is directed to submit a declaration from one or more of the individuals involved in

21   this incident, addressing:

22       (1)  the nature of the initial report beyond what is outlined above, if any;

23       (2)  the motivations of those involved in confiscating and disposing of the biological material;

24       (3)  whether inmate Fernandez advised any of the NDOC officers that there was a likelihood of

25   litigation and that he needed to preserve this evidence for litigation. If the declarant states Plaintiff

26   communicated this information, the declarant shall explain all further actions taken thereafter; and

27       (4)  any other subject which the declarant(s) wish to address regarding the alleged spoliation.

28       Plaintiff shall thereafter have an opportunity to submit to the court, **on or before June 20, 2014,**

8

1  by declaration any additional facts beyond those recited in his motion (Doc # 151) and attachments.

2  Plaintiff shall also address what facts or other information he has which would make the biological

3  evidence relevant, i.e., how this biological evidence would confirm Plaintiff was directly or

4  surreptitiously forced to ingest a laxative, and what medical or scientific information Plaintiff has which

5  would establish that ant such test would reveal the presence of a laxative. Additionally, Plaintiff shall

6  explain to the court by whom he expected to have this testing performed and at whose expense.  Last,

7  Plaintiff shall identify against which Defendants he seeks to have sanctions imposed.

8         The parties shall also <u>each</u> address, with respect to this specific topic, relevant authorities

9  pertaining to spoliation and/or a failure to preserve evidence insofar as it relates to these constitutional

10 claims asserted by Plaintiff.

11        **b)  The Alleged Failure to Preserve Photographic Evidence**

12        As discussed above, Plaintiff claims the Defendants also took photographs and video taped not

13 only the confiscation of the biological evidence but also his ingesting a laxative. (Doc. # 151 at 3.)

14 Plaintiff also states that the "photographs from September 29, 2011, which Wilson took, support and

15 relate to Plaintiff's claim of retaliation." (*Id*. at 7.) Officer Wilson, who was not added as a defendant

16 until Judge Hicks' order of September 18, 2013 (Doc # 217), does not appear to be mentioned elsewhere

17 in the motion.

18        Plaintiff also makes no specific reference to whoever supposedly "destroyed" the photographic

19 evidence, assuming there ever was any such evidence. (Doc. # 151 at 6.) According to Defendants, no

20 such "evidence" ever existed. In that regard, in Exhibit P to Plaintiff's motion, Plaintiff set forth the

21 following responses Defendants provided to Plaintiff's First Request for Production regarding

22 photographic or visual evidence:

23        Request for Production No 26:
          Produce and identify all video, digital, and audio recordings of plaintiff
24        while in Unit 7A and B, while in the exercise yard being escorted to or
          from those units, and while in the Mental Health Unit at NNCC from
25        September 14, 2011 though January 16, 2012.

26        Response to Production No. 26:

27                                        * * *
          Not withstanding these objections, and without waiving them, Defendants
28        are not aware of any such video or audio recordings from movements of

1    Plaintiff on the exercise yard or during escort from September 14, 2011
     and January 16, 2012.

2

3    Doc. # 151 at 3; pp.39-40 (Exh. P).

4         Plaintiff's motion also references Defendants' Response to Plaintiff's Second Request for

5    Production, Request No. 5 as follows:

6         Request for Production No. 5:

7         Produce and identify each and every video, digital and audio record of
          Plaintiff while Plaintiff was incarcerated at the Northern Nevada

8         Correctional Center in Unit 7A, Unit 7B, the Mental Health Unit, and
          while Plaintiff was being escorted on the exercise yard during the time

9         between September 14, 2011 through January 16, 2012.

10        Response to Production No. 5:

11                                    * * *
          Notwithstanding these objections and without waiving them, Defendants

12        reiterate that they have investigated this request and there are no
          recordings that would be responsive to this request, therefore no response

13        is forthcoming to this request.

14   *Id*. at 3; pp. 41-42 (Exh. Q).

15        Plaintiff also refers to Defendants' responses to certain of Plaintiff's requests for admissions.

16   These responses reiterate what Defendants stated in their earlier discovery responses, i.e., there are no

17   video recordings or photographs which were made or retained during the September 14, 2001-January 2,

18   2012 time period:

19        Request for Admission No. 2:

20        Admit that from September 14, 2011 through January 02, 2012, Unit 7B
          at NNCC had the capability of video recording persons within the unit.

21

22        Response to Admission No. 2:

23        Deny. Equipment was installed, but information indicates recording
          ability wasn't present until after time referenced.

24        Request for Admission No. 3:

25        Admit that from September 14 through January 02, 2012 or during this
          period, the Plaintiff was video recorded in Unit 7B at NNCC.

26

27        Response to Admission No. 3:

28        Deny. See Response no. 2.

1    Request for Admission No. 4:

2    Admit that during January 02, 2012 through January 05, 2012 Unit 8B-
     17A Cell had video recording cameras installed within it at the MHU at
3    NNCC.

4    Response to Admission No. 4:

5    Deny. Any cameras for the unit and time reference were merely for
     observation, not recording.
6
     Request for Admission No. 5:
7
     Admit that during January 02, 2012 through January 05, 2012 Plaintiff
8    was video recorded in Cell 8B-17A in the MHU at NNCC.

9    Response to Admission No. 5:

10   Deny, see response 4 above.

11   *Id*. at 3; pp. 43-45 (Exh. R).

12       This court emphasizes that the foregoing discovery responses, which consistently deny any such

13   photographic evidence ever existed, were submitted by <u>Plaintiff</u> as exhibits accompanying his motion.

14   On the other hand, other than his own contentions of how the NDOC camera systems were supposed to

15   function, Plaintiff submitted no documentary evidence that in fact there were any photographs or video

16   tapes substantiating Plaintiff's contentions.

17       Additionally, in another filing submitted by Defendants, the court was provided with further

18   discovery responses which, for the third time, verify the absence of any photographs or video recordings:

19   Defendants' Response to Request for Production of Documents [Set Six]:

20   REQUEST FOR PRODUCTION NO. 1:

21   Produce each and every digital video images and/or photographs which
     were taken by correctional officers on January 02, 2012, of Plaintiff's cell
22   at NNCC unit 7B 40A, including but not limited to the bags of fecal
     matter and cups of urine which were referenced in the officer's incident
23   report. Report number IR-2012-NNCC-000004 filed on January 02, 2012,
     and appears in your exhibit 6 of Doc. #12 Def. Op. To Pl. Mtn for TRO
24   and PI.

25   RESPONSE TO PRODUCTION NO. 1:

26   As indicated in IR-2012-NNCC-000004, the fecal matter in plastic wrap
     and plastic bags of urine were secured in Bio-hazzard containers and
27   disposed of; photographs or digital video images were not taken by
     officer to Defendants' knowledge. Therefore, no further response is
28   forthcoming to this request.

11

1                                          * * *

2          REQUEST FOR PRODUCTION NO. 3:

3          Produce each video recording and/or digital recordings from Unit7B on
           January 02, 2012 at NNCC from 6:00 am through 12:00 pm.
4
           RESPONSE TO PRODUCTION NO. 3:
5
           * * * after a reasonable inquiry, Defendants were unable to locate any
6          such video or digital recordings of Plaintiff from Unit 7B on January 02,
           2012, at NNCC.
7
   Doc. # 192-2 at 3 (Exh. B).
8

9          The foregoing discovery production (Defendants' Response to Plaintiff's Sixth Set of Requests

10  for Production of Documents) also addresses the photographs which Plaintiff claims were taken by

11  Officer Wilson and asserts that Defendants have not located any such photographs:

12         REQUEST FOR PRODUCTION NO. 8:
           Produce each and every video recording, digital recording, video image,
13         photographs, digital image, regardless of the form, which would have
           been produce by Jonathan Wilson, correctional officer, on September 29,
14         2011 of the cell door at NNCC at Unit 7B cell 40 and the video recording
           and/or digital recording from that unit on that day.
15
           RESPONSE TO PRODUCTION NO. 8:
16
           * * * Defendants have made a reasonable inquiry into whether or not any
17         such video recording, digitial (sic) or video image or photographs were
           produce by Officer Wilson on or about September 28 2011, and have not
18         located any such documents. In addition, the document sought in this
           request are irrelevant and not related to the subject matter of this litigation
19         involving the MHU in January 2012.

20  *Id.* at 6 (Exh. B).

21         The conclusion the court draws from these discovery responses is that the Defendants have

22  consistently represented  no photographs or video recordings were obtained or the relevant time period.

23  Other than Plaintiff's unsubstantiated allegations photographs were taken and that recordings were made

24  of the videos, the court is not aware of any evidence documenting the existence of any video tapes or

25  photographs.

26         In most spoliation cases, there is no dispute certain evidence existed and that the evidence was

27  destroyed. *See, e.g., U.S. v. Kitsap Physicians Services*, 314 F.3d 995, 1001 (9th Cir. 2002). However,

28  in this matter, in light of Defendants' discovery responses, there is a  serious issue whether the

1   photographic or video taped evidence Plaintiff claims was spoliated ever existed.

2       It is Plaintiff's burden to make a prima facie showing that this evidence existed. "The party

3   seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim."

4   *Reinsdorf v. Skechers U.S.A., Inc. et al.*, 296 F.R.D. 604, 628 (C.D.Cal.2013) *citing Centrifugal Force,*

5   *Inc. v. Softnet Communication, Inc.*, 783 F.Supp.2d 736, 740 (S.D.N.Y.2011). One of the elements of a

6   spoliation claim is that the party must demonstrate the evidence actually existed and was destroyed.

7   *Genon Mid-Atlantic, LLC v. Stone & Webster*, 282 F.R.D. 346,357 (S.D.N.Y.2012), *citing Orbit One*

8   *Commc'ns v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y.2010).

9       Plaintiff's motion has not demonstrated any photographs were actually taken or video recordings

10  made during the relevant time period. Plaintiff has failed to satisfy the burden imposed upon him to

11  establish the existence of this evidence. Accordingly, it logically follows there can be no spoliation of

12  evidence which the court cannot verify ever existed.

13      The component of Plaintiff's motion for sanctions relating to photographic and video taped

14  evidence is denied.[8]

15      **c. Failure to Preserve Evidence: Plaintiff's Request to Warden Palmer**

16      Plaintiff states he "wrote a memo to Palmer advising that he had relevant evidence that needed

17  to be picked up. Exh. G. Palmer, nor his agents picked up the evidence." (Doc. # 151 at 2.) An affidavit

18  of Plaintiff's mother, Dorothy Bedell, states that on or about September 21, 2011, she called Defendant

19  Palmer and communicated her son's allegations to him. She recites that Warden Palmer said "they would

20  look in to (sic) it." (*Id.* at 24, ¶ 5; Exh. B.)  She represents she called again on or about November 11,

21  2011, asking that "he [Warden Palmer] pick up this evidence, which was "a sample of [Plaintiff's] urine

22  and the food as evidence." (*Id*. at 25, ¶ 8.) Plaintiff in his affidavit represents he made similar requests

23  to Warden Palmer "to pick up my evidence I had of constitutional violations." (*Id.* at 22; ¶ 6, Exh. B.)

24  Plaintiff's motion also references "Exhibit G" to his motion, filed under seal as Doc. # 152-2. This

25  document purports to be a November 15, 2011 memorandum to Warden Palmer wherein Plaintiff claims

26

27      [8] This conclusion is not to suggest Plaintiff cannot necessarily present evidence at trial, if this case proceeds that
    far, as to his claims Defendant took photographs or recorded videos of his "drugging." This court's conclusion is simply no
28  sanctions are appropriate with respect to this disputed conduct. This court further notes, however, whatever evidence may
    be admissible at trial is within the province of the District Judge.

1    he has "evidence that I wish to provide to authorities concerning" what Plaintiff descried were "serious

2    violations to my rights and my health." (*Id.* at 16.)[9]

3           The court does not have any responsive material from Defendants, particularly Defendant Palmer,

4    regarding Plaintiff's assertion of Warden Palmer's failure to preserve this evidence. Accordingly, **on or**

5    **before May 30, 2014,** Defendants shall submit a declaration(s) of Warden Palmer, and, if desired, any

6    other NDOC personnel knowledgeable about the alleged requests for preservation of evidence.

7    Defendants shall also provide legal authorities pertinent to these factual allegations as to whether they

8    give rise to an actionable claim for spoliation.

9           Plaintiff may reply to Defendants' submission **on or before June 20, 2014.** Plaintiff shall also

10   provide the court any additional facts Plaintiff has with respect to the request for preservation of

11   evidence made to Warden Palmer. Plaintiff shall also address and provide the court legal authorities

12   pertinent to these factual allegations as to whether they give rise to an actionable claim for spoliation.

13           **d) Failure to Take Blood Samples**

14           Other than Plaintiff's passing reference the "Defendants failed to take blood samples from

15   Plaintiff to obtain the truth" (Doc. # 151 at 11), the court is unaware of any facts or even allegations

16   with regard to this contention. Nevertheless, Defendants are directed to provide the court **on or before**

17   **May 30, 2014,** any additional factual information regarding the alleged failure to take blood samples

18   (Doc # 151 at 11) and to discuss legal authorities whether the failure to take blood samples constitutes

19   an actionable spoliation claim.

20           Plaintiff's shall reply to Defendant's submission **on or before June 20, 2014.** Plaintiff shall also

21   identify which Defendant(s) he believes should be subject to an imposition of sanctions for the alleged

22   failure to secure blood samples. However, as with the issue of analysis of the urine and feces samples,

23

24

25   [9] Exhibit G (Doc. # 152-2 at 16) did not specifically refer to "biological evidence." The text of Plaintiff's request
     to the Warden in Exhibit G, which the court "unseals," reads as follows:

26           Finally, there is a serious violation to my rights and my health. I've already had my
             family call on 11/11/11. I have evidence that I wish to provide to authorities concerning
27           this. I need to speak to someone very soon concerning this. Please have someone come
             to speak to me concerning this. Thank you.

28
     Doc. # 152-2 at 16.

14

1    Plaintiff is also directed to identify medical or scientific literature which would establish that a blood

2    test would reveal the presence of a laxative. Additionally, Plaintiff is to explain to the court by whom

3    he expected to have this testing performed and at whose expense.

4            **e)  Failure to Administer Polygraph Examination**

5            Plaintiff states that "the Defendants failed to provide Plaintiff with a polygraph examination to

6    preserve this evidence." (Doc. # 151 at 10, 11.)

7            The Defendants are directed to provide the court **on or before May 30, 2014,** any additional

8    factual information regarding the alleged failure to administer a polygraph examination and to discuss

9    legal authorities whether the failure to administer a polygraph examination constitutes an actionable

10   spoliation claim. Plaintiff shall reply to Defendants' submission **on or before June 20, 2014.** Plaintiff

11   shall also identify which Defendant(s) he believes should be subject to an imposition of sanctions, if the

12   court were to impose sanctions for this failure, and what a polygraph examination was expected to reveal

13   with respect to Plaintiff's claims the Defendants forcibly medicated him with a laxative.

14           **f)  Spoliation: I-File**

15           Plaintiff's motion (Doc. # 151) also alleged Defendants lost a portion of Plaintiff's Institutional

16   File (I-File). The court addressed this contention at a hearing on August 19, 2013. The Court granted in

17   part Plaintiff's motion to compel production of his complete I-File. (Doc. # 201 at 3.) Defendants were

18   directed to either produce the entire file or explain what effort has been undertaken to locate the missing

19   portion and were provided 30 days to supplement their discovery filings. (*Id.* at 5.) Defendants

20   subsequently reported the missing sections of Plaintiff's I-File were located and were sent to Ely State

21   Prison for Plaintiff to review. (Doc. # 216 at 2-3; Doc. # 216-1 (Exh U); Doc. # 216-2 (Exh. V); Doc.

22   # 216-3 (Exh. W); Doc. # 216-4 (Exh. X); and Doc. # 216-5 (Exh. Z).)[10]

23           Thus, the Plaintiff's I-File is no longer relevant to Plaintiff's spoliation motion, particularly since

24   this court further determined that there was no prior preservation order regarding the I-file. (Doc. # 221

25   at 4-5.) Therefore, the court will not request nor entertain any further briefing on the subject of Plaintiff's

26   I-File relating to any spoliation claim.

27

28           [10] Neither Plaintiff's Motion to Correct Order (200/201) nor Plaintiff's Motion for Review of Order # 221 argued
     the I-File issue was still pertinent to the spoliation issue.

1

**CONCLUSION**

2          The parties are directed to address spoliation issues as more specifically delineated in this order.

3     IT IS SO ORDERED.

4     DATED:  May 15, 2014

5

6     _____
      WILLIAM G. COBB

7     UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28